IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RHONDA A. KING-SMALLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-19-262-SPS |
| ) | |
| COMMISSIONER of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Rhonda A. King-Smalley requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied.  If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-nine years old at the time of the most recent administrative hearing (Tr. 187, 816). She completed high school and some college and has previously worked as an EKG technician, data entry/admits clerk, and EEG technician (Tr. 162, 529, 768). The claimant alleges that she has been unable to work from an amended alleged onset date of June 1, 2011, due to osteoarthritis, arrythmia, aortic stenosis, myocardial ischemia, anxiety, degenerative disc disease, herniated disc sciatica, tendinitis, and a hiatal hernia (Tr. 15, 196).

### Procedural History

On July 12, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Luke Liter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 21, 2014 (Tr. 15-30). The Appeals Council denied review, but this Court reversed in Case No. CIV-15-442-KEW and remanded to the ALJ on March 31, 2017 (Tr. 842-854). On remand, ALJ Liter conducted a second administrative hearing and again determined that the claimant was not disabled in a written decision dated May 2, 2018 (Tr. 749-770). The Appeals Council again denied review, so ALJ Liter's May 2018 opinion is the final

decision of the Commissioner for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He found that the claimant had the residual functional capacity ("RFC") to perform less than sedentary work, *i. e.*, she could lift/carry/push/pull ten pounds occasionally and less than ten pounds frequently, sit for six hours in an eight-hour workday, stand/walk a combined total of two hours in an eight-hour workday, and she could occasionally climb ramps/stairs, balance, kneel, stoop, crouch, and crawl, but should avoid climbing ladders/ropes/scaffolds. Additionally, he found she should avoid all overhead reaching with the bilateral upper extremities, and she could not tolerate exposure to hazards such as unprotected heights or dangerous moving machinery.  Finally, he found she could understand, remember, and carry out simple tasks, and could tolerate superficial contact with coworkers, supervisors, and members of the public (Tr. 754).  The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform, *e. g.*, electronics worker and touch-up screener (Tr. 768-769).

## Review

The claimant contends that the ALJ erred by:  (i) failing to properly consider the opinion of consultative physician Dr. Beth Jeffries, Ph.D., and (ii) failing to identify jobs she could perform in light of the assigned RFC.  Neither of these contentions have merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ found that the claimant had the severe impairments of mood disorder, anxiety, pain disorder, mild degenerative disc disease of the lumbar spine, mild degenerative disc disease of the thoracic spine, degenerative disc disease of the cervical spine status post anterior cervical discectomy and fusion at C5-6, right shoulder impairment, gastroesophageal reflux disease, and history of substance abuse, as well as the nonsevere impairments of history of hypotensive and irritable bowel syndrome (Tr. 752). The medical evidence relevant to the claimant's mental impairments reflects that she was noted to have anxiety at least as far back as 2010, and depression was also noted by 2012 (Tr. 306, 357, 617, 1287). However, the claimant received no mental health treatment and the general treating notes merely reflect the diagnoses. The claimant also has a number of pain-producing impairments for which she was prescribed various medications at differing times, but she also demonstrated some drug-seeking behavior (Tr. 555, 711). The claimant had a number of instances of going to the hospital for pain relief for migraines and/or vomiting but would leave without treatment (Tr. 604-605). Additionally, notes reflect the claimant was sometimes confrontational with treatment providers when they did not do as she asked, particularly with regard to pain medication (Tr. 677, 1040-1041).

On October 12, 2012, Dr. Beth Jeffries, Ph.D., completed a mental status examination of the claimant (Tr. 527-531). The claimant reported severe PTSD, severe panic attacks, and anxiety (Tr. 527). Dr. Jeffries noted that the claimant had a manipulative quality about her, as well as slurred speech, but that she gave the appropriate energy and attention to all tasks and appeared to be sincere although she was polite but minimally cooperative (Tr. 528-529). The claimant showed some ability for abstract thought, and

memory and concentration appeared to be intact overall, and she could recall some details from her distant past but had poor effort (Tr. 529). However, her judgment, insight, and impulse control appeared to be impaired (Tr. 530). Dr. Jeffries assessed the claimant with a pain disorder and mood disorder not otherwise specified, noting that she had a provisional Axis II diagnosis of borderline personality disorder (Tr. 530). Under Prognosis and Recommendation, Dr. Jeffries wrote, *inter alia*,

> Her mood lability, both self-described and observed in the exam, is likely more consistent with an Axis II condition, rather than a mood disorder such as Bipolar. She is being given the diagnosis of Mood Disorder, NOS in this exam to reflect the lability, but it should be pointed out that likely the lability is more related to her Axis II condition. [] She said that she thinks she was trying to manipulate her husband at the time by saying she was suicidal, when she actually was not. Her report of manipulative behavior was observed in the exam, as she did have a manipulative quality about her in her interaction today. []Medication intervention and interpersonal counseling could be useful, despite the likelihood of an underlying personality disorder informing her behaviors. [] I believe that although she may have the ability to maintain concentration over an 8 hour workday, and a 40 hour workweek, due to personality disturbance and mood lability she likely could not do so consistently. I do not believe she could manage pace or flexibility within an occupational setting without becoming emotionally labile, and potentially acting out on her frustrations with aggression. She demonstrated adequate social skills, but a manipulative quality was strongly present. She has the ability to understand simple and complex instructions, and she likely could retain the information but may struggle to implement those instructions as needed. Prognosis is guarded at best, given the strong likelihood of a personality disorder pattern.

(Tr. 531).

On December 10, 2012, a state reviewing physician found that the claimant could perform simple and multi-step tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and could adapt to a work situation (Tr. 76). On March 3, 2013, on reconsideration, a state reviewing physician found that the claimant could

perform simple tasks but needed a limited contact situation regarding supervisors and coworkers, and that she could adapt to a lower stress work situation but should not work with the general public (Tr. 121).

At the administrative hearing, the ALJ elicited testimony from a vocational expert ("VE") regarding the claimant's past work and to determine if there were other jobs the claimant could perform with her limitations (Tr. 832-836).  The ALJ offered several hypotheticals as to someone with the claimant's age, education, and past relevant work, along with the RFC listed above (Tr. 832-833). The VE indicated that the claimant could not perform any of her past work but identified three sedentary, unskilled jobs such a person could perform: (i) document scanner, DICOT § 249.587-018; (ii) electronics worker, DICOT § 726.687-046; and (iii) touch-up screener, DICOT § 726.684-110 (Tr. 833).  The VE further indicated that the information provided was not in conflict with the Dictionary of Occupational Titles (Tr. 834).

In his written decision, the ALJ thoroughly summarized the claimant's hearing testimony and all of the medical evidence in the record going back to 2009.  As to the claimant's mental health, the ALJ noted the records reflecting adjustments to the claimant's Xanax prescription and as well diagnoses of depression and anxiety (Tr. 757).  The ALJ also noted the references in the record to the claimant's drug-seeking behavior (Tr. 757-768).  The ALJ spent significant time summarizing the mental status examination report from Dr. Jeffries (Tr. 758-759), but ultimately afforded it little weight (Tr. 759).  He noted that it was a one-time consultative exam, that the longitudinal evidence showed the claimant was prone to exaggerated or inconsistent reports, and that the claimant's

presentation of manipulative behavior likewise called into question Dr. Jeffries' findings (Tr. 759). He then stated, "There is limited evidence that a personality disturbance and/or mood lability would consistently interfere with the claimant's ability to maintain a consistent schedule[]. The majority of the evidence showed that claimant's mood complaints required minimal treatment" (Tr. 759). He then gave, as an example, a 2017 treatment note in which the claimant's judgment and insight were intact; thought processes, mood, affect, and associations were normal; and she denied hallucinations, delusions, or psychotic thought (Tr. 759). The ALJ then assigned some, but not great weight, to the opinions of the state reviewing physicians (Tr. 766). The ALJ then determined that the claimant's RFC included the limitations from the hypothetical posed in the interrogatory to the VE (Tr. 318). He then adopted the VE's testimony that the claimant could perform the light jobs of mailroom clerk, laundry sorter, and assembler (Tr. 327). Furthermore, the ALJ specifically found that the VE's "testimony [wa]s consistent with the information contained in the [DOT]" (Tr. 327).

First, the claimant asserts that the ALJ erred in evaluating Dr. Jeffries' consultative opinion. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). Those factors are: (i) the length of the treatment relationship

and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart,* 350 F.3d 1297, 1300-01 (10th Cir. 2004), *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. An ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] medical opinion and the reasons for that weight." *Id.* at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996).

In this case, the ALJ adequately discussed and analyzed Dr. Jeffries' opinion, as set forth above. The Court finds that the ALJ *did consider* her opinion in accordance with the appropriate standards and properly concluded it was entitled to little weight. The ALJ thus did not err in failing to include any additional limitations suggested by Dr. Jeffries in the claimant's RFC, where the ALJ thoroughly and completely summarized the evidence and explained the inconsistencies, notes, and the reasons for his findings. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment."). The claimant's specific complaint is that the ALJ failed to incorporate Dr. Jeffries' report in accordance with the aforementioned factors and incorporate her findings into the claimant's RFC. The Court finds, however, that the ALJ's

analysis of Dr. Jeffries' consultative opinion was sufficiently clear for the Court to determine the weight given. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."), *citing* 20 C.F.R. § 404.1527(d)(2). *See also Andersen v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation."). The claimant is essentially asking the Court to reweigh the evidence and determine his RFC differently from the Commissioner, which the Court cannot do. *See Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

Next, the claimant asserts that the ALJ erred in identifying jobs she could perform, because there was a conflict between the information provided and the Dictionary of Occupational Titles ("DOT"). Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. Although the VE did not identify

any conflict between her testimony and the DOT, the claimant contends there is a conflict with regard to the reasoning levels of each of the jobs identified.  *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

Both jobs identified by and relied upon by the ALJ at step five have a reasoning level of 2.  *See* DICOT §§ 726.687-046, 726.684-110.  A reasoning level of two requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations."  *See* DICOT §§ 726.687-046, 726.684-110.  The claimant asserts that this reasoning level is incompatible with her limitation to simple tasks.  The Court agrees with the Commissioner, however, that a reasoning level of two *is consistent* with performing simple tasks and that other courts have reached the same conclusion.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) ("This level-two reasoning appears more consistent with Plaintiff's RFC [limiting her to simple and routine work tasks.]"); *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) ("Ms. Stokes' second argument is that the ALJ's limitation to simple, repetitive and routine work should be construed as a limitation to jobs with a reasoning-level rating of one.  We disagree.").  *See also Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. March 13, 2017) ("In accordance with the court's findings in *Hackett*, a restriction to simple work is consistent with this reasoning level [of 2]."); *Goleman v. Colvin*, 2016 WL 3556958, at *4

(W.D. Okla. May 6, 2016) (where RFC limited claimant to "simple, routine, repetitive instructions," [t]he ALJ properly relied on the jobs identified by the VE with a reasoning level of two.").

Finally, the claimant contends that the ALJ failed to properly account for her shoulder impairment at step five because although he limited her to avoiding all overhead reaching with the bilateral upper extremities (Tr. 754), he should have also included a limitation to occasional reaching in all directions which would have eliminated all the jobs provided by the VE. In support, the claimant states that the ALJ relies on notes from one doctor that are "cursory at best" and should have credited another physician who had examined the claimant a year earlier and found "marked crepitance" in her right shoulder on movement as well as the claimant's own testimony regarding her limitations (Tr. 1114-1115, 1185-1186). But the ALJ actually acknowledged both reports, and further properly addressed the claimant's subjective statements which he found were not correlated to the evidence (Tr. 761-762, 764).

The ALJ's written opinion indicates that he considered the entire record, determined an appropriate RFC, and concluded that the claimant was not disabled because there was work that she could perform. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). All of this was "well within the province of the ALJ." *Corber*

*v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.  Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence.  The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 1st day of September, 2020.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**